# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | |
|---|---|
| **JEANNE R. WOMBLE**, ) | |
| ) | Civil Action No. 5:10cv00010 |
| *Plaintiff* ) | |
| v. ) | **REPORT AND** |
| ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE**, ) | |
| Commissioner of Social Security, ) | |
| ) | By:   Hon. James G. Welsh |
| *Defendant* ) | U. S. Magistrate Judge |
| ) | |

Plaintiff, Jeanne R. Womble, brings this action pursuant to 42 U.S.C. § 405(g) challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her claims for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended, ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act. 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq*. respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g).

On June 10, 2010 the Commissioner filed his Answer along with a certified copy of the Administrative Record ("R."), which included the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on June 7, 2010, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The matter having now been briefed by the parties and no

written request having been made for oral argument,[1] the following report and recommended disposition is submitted.

**I.     Summary**

The plaintiff in this case was fifty-four years of age[2] at the time of her alleged January 1, 2008 disability onset date. (R.12,125,132,138,165,180,213.)  She has a high school education, and her past relevant work included jobs such as a machine operator, and clerk/stocker. (R.24,33-40,158,163,172-178,228.)  As outlined in the plaintiff's disability reports, her hearing testimony and her brief on appeal, her basic contention is that she is disabled due to the combined effects of several chronic physical and mental health problems, including knee pain, respiratory difficulties, and an affective disorder with attendant anxiety. (R.148-155,157,167,170, 183-184, 188-189,192-193,194-201,202-212,223.)  A careful review of the medical record, however, lacks objective evidence to support her claim that these conditions, either singularly or in combination, and the attendant pain are of disabling intensity.[3]

---

[1] WDVa Gen. R. 4(c)(2) direct that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

[2] At of the age 54 an individual is classified as a *person closely approaching advance age*, which spans ages 50 to 54.  *See* 20 C.F.R. §§ 404.1563(c)-(d) and 416.963(c)-(d).  Subsection (b) of these regulations governing age categories further provides, however, that there is to be some flexibility between the age categories in "borderline" situations.

[3] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

## II. Standard of Review

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir. 1990); *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966). "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)). This standard of review is more deferential than *de novo*. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance" of evidence. *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ at 642). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Id*. (quoting *Craig*, 76 F.3$^d$ at 589). The ALJ's conclusions of law are, however, not subject to the same deferential view and are to be reviewed *de novo*. *Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000).

## III. Administrative History

The record shows that the plaintiff protectively filed her applications on December 11, 2007, initially alleging disability as of June 22, 2007. (R.12,156-168.) Her applications

originally alleged a disability onset date of April 24, 2007; this date, however, was later amended to January 1, 2008. (R,12,41-442,45.) Her claims were denied both initially and on reconsideration. (R.12,69-78,80-86.) Pursuant to the plaintiff's timely request, an administrative hearing was held on May 5, 2009 before an administrative law judge ("ALJ"). (R.12,28-68,87-90.) At the hearing, the plaintiff was present; she testified; she was represented by counsel, and vocational testimony was given by Earl Glosser, Ph.D. (R.12,28,31-59,61-67,91-94,96,98-99, 121-123,124.) By written decision dated June 25, 2009 the plaintiff's applications were once again denied, and her subsequent request for Appeals Council review was also denied. (R.1-8, 12-27.) The ALJ's unfavorable decision, therefore, now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

**IV.     Facts**

The plaintiff's medical record in this case covers a thirty-seven month period before her alleged disability onset date of January 1, 2008 and a fifteen month period after that date. This record demonstrates her ongoing efforts to obtain treatment for a myriad of physical complaints, as well as her receipt of mental health counseling and medication management for a non-psychotic depressive disorder and for opioid dependence.

Throughout the period covered by her medical records, the plaintiff was seen on numerous occasions either by her primary care provider or in the emergency room at Augusta Health for treatment of multiple transient and chronic medical complaints. These including *inter alia* a muscle strain, cough and wheezing, chronic back pain, "panic attacks," bronchitis,

sinus drainage, stress, depression, anxiety, worsening chronic obstructive pulmonary disease ("COPD"), head and neck pain following an off-road accident, rib pain related to coughing, left thumb pain, difficulty urinating, mood disorder, right knee pain, Klonopin overdose, congestion, upper back pain, high blood pressure, chronic left knee pain secondary to osteoarthritis, right knee pain, lower extremity edema, cold, right ear pain, bilateral lower leg rash, cough with attendant chest pain, and dental pain. (R.238-248,268-271,277,280,283,343,347-363,364-381, 384,401,427-447,465-570,585-586,678-697,700-702,704,706-707,709-710,712-713,717-721,726 -731,733-789.)

Prior to the plaintiff's alleged disability onset, she received inpatient hospital care for a total right knee replacement in September 2004. (R.249-254.) In December 2005 she was involved in a motor vehicle accident and sustained a cervical strain injury. (R.283.) Of her multiple any physical complaints, only her development of pneumonia in October 2007 necessitated any inpatient hospital care, and it cleared within five days without any complication. (R.418-422.) Only her complaints of diminished left knee flexion necessitated a radiographic diagnostic study in September 2007 and three sessions of physical therapy in November of the following year. (R.423-424,457-460, 747-754.) Her reported physical ailments were otherwise treated conservatively.

Separately, the plaintiff's mental health issues necessitated a four-day hospitalization in March 2006 and a six-day hospitalization two years later in May 2007. (R.274-276,281-282.) On each occasion she was diagnosed to be suffering from a major depressive disorder and from opioid withdrawal. (*Id*.) Following the second of these hospitalizations, the plaintiff was seen

5

for an initial Valley Community Services Board ("VCSB") intake assessment. (R.290-294.) As part of her psychiatric history she reported experiencing depression, anxiety and panic attacks since childhood, having taken medications for these conditions "off and on," having seen a mental health counselor in the past, and having never followed-through with any substance abuse treatment. (*Id*.)

She was subsequently seen for a psychiatric evaluation on June 25, 2007. (R.285-289.) At that time, the plaintiff described her mood as "depressed; her memory as being "gone," to have no energy, and her concentration to be "terrible." Dr. Ashraful Huq, the examining psychiatrist, found the plaintiff to exhibit a "restricted" affect, "fair" insight, "average" intelligence, and "linier, logical and goal directed" thought processes. He rated her current level of functioning at *50* on the GAF scale[4] and diagnosed her condition to be a sedative dependence and a "mild" opioid mood disorder. (*Id*.) He advised her to continue the use two anti-depressants (Trazodone and Fluoxetine); he discontinued her other medications, which included Haldol (an anti-psychotic), Benadryl (an allergy reliever) and Klonopin (an anxiety reliever), and he recommended mental health counseling and continued substance abuse treatment. (*Id*.)

---

[4] The Global Assessment of Functioning ("GAF") is a numeric scale which ranges from zero to 100 and is used by mental health clinicians and doctors to represent a judgment of an adult individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders Fourth Edition, ("DSM-IV"), 32 (American Psychiatric Association 1994). A specific GAF score represents a clinician's judgment of an individual's overall level of functioning, and a GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning. DSM-IV at 32.

Despite Dr. Huq's June 25, 2007 discontinuance of Klonopin as a treatment modality, eight days later the plaintiff was hospitalized overnight after reporting that she had overdosed on this medication and again started using opioids. (R.347-351.) Diagnoses of opioid dependence, moderate bipolar disorder and adjustment disorder were made; the plaintiff assessed to be functioning at *60* in the GAF scale,[5] and it was noted at the time of her discharge she was stable and free of any suicidal ideation. (R.345-346.)

When seen by Dr. Huq for a follow-up appointment on August 21, 2007 the plaintiff exhibited a restricted and, at times, a tearful affect. (R.387-388.) She was defensive about interpersonal problems, and she challenged both Dr. Huq's diagnoses and his treatment recommendations. (*Id.*) Dr. Huq's diagnoses on that occasion included multi-substance dependence in early partial remission, dysthymic disorder, and possible bipolar affective disorder; he assessed her current level of functioning at *50* on the GAF scale; he increased her anti-depressant dosage, and he advised her to continue with therapy and to maintain sobriety. (*Id.*)

One month later Dr. Huq found the plaintiff's mood and energy to be improved, despite the fact that she was "working rotating shifts." (R.386.) He noted that she did not appear to have any obsessive or delusional thinking; and he found her insight to be "fair," and he assessed her level of functioning to be *52* on the GAF scale. (*Id.*)

---

[5] A GAF of 51-60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e.g., few friends, conflict with peers or co-workers)." DSM-IV at 32.

Records from VCSB additionally show the plaintiff's participation in individual mental health therapy and medication management from June 2007 to April 2008, when she was incarcerated for fifty-five days, and they show her subsequent "sporadic" participation in counseling between June 2008 and November 2008. (R.385-388,792-850.) After continuing absences and lack of contact with VCSB, however, the plaintiff was dropped from the counseling program in February 2009. (R.793-799.)

As part of the initial administrative decision-making process, and again as part of agency's reconsideration of the plaintiff's claim, the nature and extent of her mental impairments were assessed by state agency psychologists. (R.3215-335,394.) Based on diagnoses of opioid and benzodiazepine dependence and exhibited traits of a depressive, anxiety and personality disorders, each mental health reviewer concluded that the plaintiff retained the ability to meet the basic mental demands of competitive work on a regular and sustained basis. With continued treatment and abstinence, each additionally concluded that plaintiff was mentally capable of performing simple repetitive tasks in a non structured environment.

Based on similar separate assessments of the record, two state agency medical reviewers each concluded that plaintiff's physical ailments were not of disabling severity and that she retained the ability to perform light work. (R.308-314,390.)

Nothing in the records suggests any contrary functional assessment by any treating or examining medical or mental health professional. (*See e.g.,* 401.)

After summarizing the evidence, the ALJ concluded that the plaintiff's respiratory disorder, her disorders of the knees, and her affective disorder with attendant anxiety were *severe* impairments.[6] (R.20.) He next considered in great detail the functional effect of these conditions and concluded that the plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. (R.20-24.) Based on his review of the full record, the ALJ concluded that the plaintiff's physical and mental impairments, including her pain, and other symptoms, were not totally disabling within the meaning of the Act and that she retained the functional ability to perform a range of light work,[7] including the cashiering work that she performed in the past. (R.24-27.)

## V. Analysis

In her brief the plaintiff asserts three errors on the part of the ALJ. First, she argues that the ALJ improperly "divid[ed]" her past "composite job" as a convenience store cashier/stock clerk in order to conclude that she retained the functional ability to perform the cashiering part of the job. As a second contention she argues that it was error for the ALJ to consider negatively

---

[6]. Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

[7] To determine the exertional requirements for occupations in the national economy, jobs are classified by the agency as sedentary, *light, medium, heavy, and very heavy*, 20 C.F.R. § 404.1567 and § 416.967. Light work requires lifting no more than 20 pounds and frequently carrying 10 pounds, and a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b) and § 416.967(b). To be considered capable of performing a full range of light work, the relevant elaboration in Social Security Ruling ("SSR") 83-10, 1983 SSR LEXIS 30 provides, an individual must be able to stand and walk, off and

her receipt of unemployment at a time when she claimed to be disabled. And lastly she contends the ALJ failed to take into consideration her amended onset date. A review of the record fails to support any of these arguments.

Restated the first of these contentions is that the ALJ misclassified her past cashiering jobs as exertionally *light*, when her testimony showed that this work as performed was a composite job requiring her to stock shelves at a *medium* level of exertion (*See* R.37-38,63).[8] By focusing on the less strenuous cashiering portion of this past relevant work, she argues, the ALJ erroneously concluded that she could perform work as a cashier, as that job is generally performed in the national economy (*See* R.64). Contrary to her testimony, however, the plaintiff's work history includes two "cashier" jobs that required no lifting, carrying or stocking duties. (R.176-177.) Moreover, contrary to the plaintiff's argument "[t]he regulations require that the claimant not be able to perform [her] past kind of work, not that [she] merely be unable to perform a specific job [she] held in the past." *Jackson v.* Bowen, 801 F.2$^d$ 1291, 1293 (11th Cir. 1986) (citing 20 C.F.R. § 404.1520(e) and § 416.920(e)). Although the plaintiff's prior job as a cashier/stocker may well have involved exertional demands significantly in excess of those generally required by employers in the national economy for work as a cashier, she must still demonstrate that she is also unable to perform the functional demands and job duties of the position as generally required by employers nationwide. *Klawinski v. Comm'r of Soc. Sec*., 391 Fed. Appx. 772, 774 (11th Cir. 2010) (citing SSR 82-61). Having failed to do so, one is

---

on, for a total of approximately 6 hours of an 8-hour workday.

[8] At the administrative hearing the vocational witness testified that the Dictionary of Occupational Titles (commonly called the "DOT") classifies cashiering work as exertionally *light.* and the cashier/stocker job performed as described by the plaintiff in her testimony to be medium is exertional level. (R.63-64.)

constrained to conclude that substantial evidence supports the ALJ's finding that the plaintiff performed past work involving only a light level of exertion.

Contrary to the plaintiff's second argument, her acknowledged receipt of unemployment benefits during the first and second quarters of 2008 (R.42), when she was at the same time claiming to be disabled, was patently an appropriate factor for an ALJ to consider in making his credibility assessment, and this claim of error, therefore, is without merit. *E.g., Schmidt v. Barnhart*, 395 F.3$^d$ 737, 746 (7th Cir. 2005).

On review the plaintiff's third contention that the ALJ failed to evaluate her claim on the basis of her January 2008 amended onset date is also without merit. Although the ALJ's seventh numbered finding states that the plaintiff had not been under a disability from "April 24, 2007 through the date of this decision," this incorrect date is harmless and did not prejudice the plaintiff. In his written decision, the ALJ properly noted that the plaintiff originally alleged a disability onset date of April 2007. (R.12.) He then noted her amendment of that date during the hearing to January 1, 2008. (*Id.*) He re-acknowledged her amended disability onset date two pages later as part of his second numbered finding. (R.14.) As part of his discussion of the medical evidence he yet again took note of the fact that some was "prior to the period at issue." (R.22.) Moreover, the ALJ's decision suggests no failure to consider decisionaly relevant evidence or his improper reliance on evidence pre-dating the plaintiff's amended onset date. (*See Friese v. Barnhart*, 2007 U.S. Dist. LEXIS 96871, *4 (SDWVa, 2007); *Gibson v. Astrue*, 2009 U.S. Dist. LEXIS 104433, *9-10 (DSC, 2009).

## VI. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. Substantial evidence in the record supports the findings of the ALJ that through the decision date the plaintiff was capable of performing cashiering work at a light exertional level and was not disabled within the meaning of the Act;

2. Substantial evidence supports the ALJ's findings that the plaintiff 's past relevant work as a cashier involved only a light level of exertion;

3. The plaintiff failed to meet her burden to show that she could not perform her past relevant work;

4. The ALJ properly considered the plaintiff's receipt of unemployment benefits at the time she was claiming to be disabled within the meaning of the Act.

5. The ALJ's reference to the onset date originally claimed by the plaintiff was a clerical mistake and at most a harmless error;

6. The plaintiff has not met her burden of proving a disabling condition on or before the decision date; and

7. The final decision of the Commissioner should be affirmed.

## VII. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VIII. Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof.  **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 15th day of March 2011.

                                                  /s/   *James G. Welsh*
                                                  United States Magistrate Judge